## NEW DEPARTURE MFG. CO. v. ROCKWELL-DRAKE CORPORATION et al.

(District Court, D. Connecticut. December 7, 1920.)

1. **Patents ⊜183—Intermediate assignor of invention could not dispute the assignee's title, because first assignor was an infant.**
    Where an inventor assigned the application for a patent to one of the defendants, who assigned it to plaintiff, to whom the patent was issued, such defendant and those claiming under him could not attack plaintiff's title on the ground that the inventor was an infant at the time of his assignment, as the assignor of a patentable invention may not deny his own title to the interest transferred.

2. **Corporations ⊜294—President held removable under contract that he should remain in corporation's employ as long as it should elect.**
    Under a contract between an owner of patents and a corporation of which he was president, providing in part that he was to remain in the corporation's employ at a specified salary so long as the company should elect, the corporation had a right to remove him as its general manager.

In Equity. Suit by the New Departure Manufacturing Company against the Rockwell-Drake Corporation and others. Decree for plaintiff.

Gales P. Moore, of Bristol, Conn. (Melville Church, of Washington, D. C., John Thomas Smith, of New York City, and John T. Robinson, of Hartford, Conn., of counsel), for plaintiff.

Edward D. Robbins and Franklin G. Neal, both of New Haven, Conn., and Arthur L. Shipman, of Hartford, Conn., for defendants.

GARVIN, District Judge. This is an action brought to restrain defendants from an infringement of a patent for improvements in antifriction bearings. The issues, however, are not those commonly arising in a patent suit, for the validity of the patent is conceded, plaintiff's legal title is not in dispute, and defendants are admittedly manufacturing bearings covered by the patent in question. Defendants claim that by reason of a contract between plaintiff and the defendant Rockwell certain well-defined equitable rights have arisen to the defendants, which fully justify their manufacture of the articles to which plaintiff objects. For many years defendant Rockwell was connected with the plaintiff, and on and for some time prior to January 1, 1903, was its president. On July 1, 1903, he made this contract with the plaintiff:

"This agreement, made this 1st day of July, 1903, by and between Albert F. Rockwell, of Bristol, in the county of Hartford and state of Connecticut, party of the first part, and the New Departure Manufacturing Company, a corporation created and existing under and by virtue of the laws of the state of ·Connecticut, and located at Bristol, in the county and state aforesaid, party of the second part, hereinafter called the company, witnesseth:

"That whereas, the said Albert F. Rockwell has invented certain new and useful improvements in driving and braking mechanism for cycles for which he has made application for the grant of letters patent of the United States, as follows, to wit: Application No. 39,700, filed December 13, 1900, for coaster brakes; application No. 114,860, filed July 9, 1902, for driving and brake mechanism for cycles; application No. 126,259, filed October 6, 1902, for lubricating device for vehicle hubs—all of which are applicable to, and designed to be embodied in, driving and braking devices for cycles, generally known as 'coaster brakes'; and

"Whereas, the said Albert F. Rockwell has invented and patented divers other inventions and improvements in bicycles, cyclometers, bells and other articles of manufacture, which patents have from time to time been issued to the company as the assignee of said Albert F. Rockwell; and

"Whereas, the company is engaged in the manufacture and sale of devices embodying and containing the inventions of the said Albert F. Rockwell, as set forth in the patents which have been granted to the company on applications of the said Rockwell, as aforesaid, and also is engaged in the manufacture and sale of coaster brakes embodying the inventions or some of the inventions set forth in the pending applications of the said Albert F. Rockwell, hereinbefore set forth by date and number; and

"Whereas, the said company desires to continue the manufacture and sale of cycle sundries, including coaster brakes, invented by the said Albert F. Rockwell:

"Now, therefore, it is mutually covenanted and agreed by and between the said Albert F. Rockwell, for himself and his legal representatives, and the company, for itself, its successors and assigns, as follows, to wit:

"1. The said Albert F. Rockwell hereby gives and grants unto the company, its successors and assigns, the exclusive leave and license to make, use and sell to others, throughout the United States and foreign countries, brakes and coaster brakes embodying any or all of the inventions set forth in the applications pending in the United States Patent Office as hereinbefore set forth by date and number, and any letters patent of the United States which may be granted thereon, or any division or renewal thereof, and also the exclusive leave and license to make and sell brakes and coaster brakes embodying any or all of such inventions of the said Albert F. Rockwell as may be set forth in any and all applications which are now pending and any and all letters patent which may have been or may hereafter be granted in any and all foreign countries for such inventions of Albert F. Rockwell relating to brakes and coaster brakes, to the full end of the term for which any

letters patent, both of the United States and foreign countries, are or may be granted.

"2. The said Albert F. Rockwell will impart to the company any and all information regarding any inventions or improvements in brakes and coaster brakes, which may hereafter be invented by him, or of which he may hereafter become possessed, immediately upon his inventing or becoming possessed thereof, and will upon the request of the company execute all applications, licenses or other written instruments which may be necessary or desirable to apply for and secure letters patent for the said improvements in brakes and coaster brakes, in the United States and in such foreign countries as may be desired by the company, and to secure to the said company the exclusive leave and license to manufacture and sell all such inventions and improvements in brakes and coaster brakes in the United States and foreign countries, under any and all letters patent which may be granted for the said inventions and improvements in brakes and coaster brakes, in the United States and in foreign countries, to the full end of the term for which any and all such letters patent may be granted.

"3. The said Albert F. Rockwell, for himself and his legal representatives, hereby ratifies and approves the constructive license to the company under which the company has heretofore made and sold brakes and coaster brakes, and also ratifies and approves the license given by the company to the P. & F. Corbin Company, of New Britain, Connecticut, to manufacture brakes and coaster brakes, embodying any or all of the inventions or improvements of the said Albert F. Rockwell, and agrees that the company may extend the term of said license to the P. & F. Corbin Company upon its expiration, and include therein the right and leave to make and sell brakes and coaster brakes embodying any and all inventions or improvements which may hereafter be invented or acquired by the said Albert F. Rockwell; but it is distinctly understood and agreed that nothing herein contained shall permit the company to grant other licenses than to the P. & F. Corbin Company, or to assign, or otherwise dispose of, its rights under this agreement in such manner as to avoid its obligations to the said Albert F. Rockwell or his legal representatives or assigns as hereinafter provided, without having first obtained in writing the consent of the said Albert F. Rockwell or his legal representatives.

"4. The said Albert F. Rockwell will execute and deliver to the company all applications, assignments and other written instruments, which may be necessary or desirable to secure letters patent of the United States and foreign countries, and to vest the absolute title thereto in the company, for the full end of the term for which all said letters patent may be granted, for any and all other inventions or improvements of every description not relating to brakes or coaster brakes now possessed by, or which may be hereafter invented and acquired by, the said Albert F. Rockwell, and that immediately upon so inventing or acquiring any such other inventions or improvements he will impart to the company full information of the manner of using and constructing the same; the assignments to the company to be made in each and every case at the time of filing of each and every application in the United States and foreign countries.

"5. In consideration of the covenants and agreements of the said Albert F. Rockwell, herein contained, the company, for itself, its successors and assigns, hereby covenants and agrees that it will at once ascertain from its books the number of brakes and coaster brakes, which have been manufactured and sold by it during the six months next preceding the date hereof extending from January 1, 1903, to June 30, 1903, embodying or containing any of the inventions in brakes and coaster brakes covered by this agreement, to render a true report of the number thereof to the said Albert F. Rockwell and to pay to him upon the signing of this agreement the sum of five cents for each and every such brake and coaster brake so manufactured and sold during said period of six months, and that it will hereafter keep accurate account of the number of brakes or coaster brakes embodying any of the inventions or improvements in brakes and coaster brakes, included within the terms of this agreement, and during and continuing during the terms of any and all patents for brakes and coaster brakes included with-

in the terms of this agreement, and to render to the said Albert F. Rockwell, upon the 1st of each month hereafter, a statement of the number of brakes and coaster brakes, embodying any of the inventions covered by this agreement, which were made and sold by the company during the next preceding month, and to pay to said Albert F. Rockwell the sum of five cents on each and every brake and coaster brake so made and sold, excepting, and it is hereby mutually understood and agreed, that the payment of five cents each shall continue only so long as the company can sell such brakes and coaster brakes at a price which will show a net profit of seventy-five cents or more, exclusive of depreciation of plant, or new equipment added, on each brake or coaster brake manufactured and sold by the company. Should the profits on each brake and coaster brake fall below seventy-five cents, then and in that event the royalty of five cents each payable to the said Albert F. Rockwell shall be reduced in proportion as such profits as are actually made shall be less than seventy-five cents, and such reduced royalty shall continue until the profits shall again be seventy-five cents on each brake or coaster brake.

"6. Upon all other manufactures of the company which shall embody any of the future inventions of the said Albert F. Rockwell, not relating to brakes and coaster brakes, excepting those lines which the company is now making, the company is to pay no royalty to the said Rockwell, until the manufacture and sale of such other articles by the company embodying any or all of such other inventions of the said Albert F. Rockwell shall in any particular line of such manufacture amount to and show a net profit to the company of fifty thousand dollars ($50,000.00) per annum and a manufacturing profit, exclusive of depreciation of plant, and new equipment added, of at least sixteen and two-thirds per cent. (16⅔%). When such sales of articles embodying any of the future inventions of the said Albert F. Rockwell, other than brakes or coaster brakes, shall show in any particular line of such articles an annual net profit of fifty thousand dollars ($50,000.00) to the company, and which shall not be less than a profit of sixteen and two-thirds per cent. (16⅔%), then and in that event the company shall pay to the said Albert F. Rockwell, in addition to the royalties on brakes and coaster brakes, a sum equaling two per cent. (2%) on the net sales; providing, however, that no payment shall be made on articles other than brakes and coaster brakes, in any year when the net manufacturing profits on such other articles shall be less than twenty-five thousand dollars ($25,000.00) or less than sixteen and two-thirds per cent. (16⅔%) exclusive of depreciation of plant and new equipment added.

"7. Nothing is to be paid to the said Albert F. Rockwell on account of the manufacture and sale of articles other than brakes and coaster brakes by the company prior to the date of this agreement.

"8. All payments made to Albert F. Rockwell under the terms of this agreement are to be figured by the company as a part of the manufacturing cost of such articles on account of which such payments are made, and the amount of such royalties to be determined by the profits to the company appearing after the manufacturing costs are thus determined.

"9. Albert F. Rockwell is to remain in the employ of the company and use his best efforts in the interests of the company so long as the company shall elect, and shall receive a salary for his services, exclusive of any sum or sums which may be paid to him hereunder as royalties, the sum of five thousand dollars ($5,000.00), payable in equal monthly payments. Should the said Albert F. Rockwell voluntarily leave the employment of the company for any other reason than the nonpayment of his royalties and salary as provided herein, then and in that event all payments to him under this agreement whether as royalties or salary shall cease and determine; but said Albert F. Rockwell agrees that the rights of the company to his inventions shall continue, and that he will perfect the title of the company absolute to any and all inventions, improvements and letters patent which he may have invented or acquired or which he shall hereafter invent or acquire.

"10. In the event of the death of Albert F. Rockwell, this agreement is to continue with his heirs and legal representatives, and all payments of royalties to be made and payable to them by the company, in the same manner

and at the same time as payable to the said Albert F. Rockwell, but the payment on account of salary to be discontinued.

"11. The company is to pay all the costs of securing patents, including attorney's fees, also for the preparation of all legal documents in connection therewith; is to assume all risks for infringement in the manufacture and sale of such patented articles, and pay all costs of litigation and damages in connection with suits to maintain said patents or for infringement of other patents.

"In witness whereof, the said Albert F. Rockwell has hereunto set his hand and seal, and the said company has caused its name to be signed and its corporate seal to be attached by an officer having the authority so to do, and each of them to a duplicate original hereof at Bristol, in the county of Hartford and state of Connecticut, this 1st day of July, 1903."

Although only a part of this contract is material, it is set forth in full, in order that the relation of the parties and their attitude toward each other as expressed in the agreement may be understood.

[1] Although plaintiff's legal title to the patent in suit is not denied, the defendants claim, and it is not disputed, that the application for the patent was made by Hugh M. Rockwell, who was the inventor. The latter assigned it to the defendant Rockwell, who in turn assigned it to plaintiff, to whom it was duly issued as assignee. The defendant Rockwell-Drake Corporation, whose entire stock has been acquired by the Marlin-Rockwell Corporation, claims by an assignment from defendant Rockwell. I do not understand that the assignor of a patentable invention may deny his own title to the interest he has transferred. He is estopped from so doing. Hugh M. Rockwell was an infant when he assigned to defendant Rockwell. The defense of his infancy is not available to the defendants. Furthermore the proof shows that the infant not only executed the assignment for a valid consideration, but ratified it when he came of age.

[2] The defendant Rockwell claims that, after operating under the above agreement for a period of years, the plaintiff determined to oust him from the position of influence which he held in the affairs of the plaintiff and to reap the benefits of his valuable assistance and experience without giving him the agreed proportion of the profits arising therefrom; that the plaintiff recognized his unusual inventive ability and knowledge of its policy when the contract was made; and that by reason of its belief that, without his assistance, it would be able to manufacture and profitably market the articles covered by the patent involved, it deliberately decided to force him out, without just cause, with the intention of defrauding him of the benefits of the contract.

The plaintiff had a right to remove defendant Rockwell as its general manager. It appears to the court that the provision of the agreement that he was to remain in the employ of the company "so long as the company shall elect" was not only not violated by the removal, but was inserted to express the intent of the parties that he might be removed at the option of the company.

The issues in this case were presented carefully and at length. The trial was characterized by what appeared to the court a gratifying attempt on the part of all the witnesses to testify truthfully, even where the truth was not beneficial.

The question, it seems, upon which plaintiff's case must stand or fall, is the construction of the contract, and upon this the court's conclusions have been indicated.

Plaintiff may have a decree.